**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSHUA LEISNER, GEORGE EURING III, CHRISTINA CALLAHAN, and MANUEL RIVAS, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | Case No. 18-cv-04162 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Hon. Sunil R. Harjani |
| CHOP HOSPITALITY LLC d/b/a CHICAGO CHOP HOUSE, CHICAGO CHOP HOUSE, INC. d/b/a CHICAGO CHOP HOUSE, MATTHEW McCAHILL, DORIS SIEMEN, CHARLES PATEL, and BHARATHBHAI PATEL | ) ) ) ) ) ) | |
| Defendants. | ) | |

**JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND PLAINTIFFS' UNOPPOSED MOTION FOR SERVICE AWARDS, ATTORNEYS' FEES AND COSTS**

Plaintiffs George Euring, Christina Callahan, and Manuel Rivas, on behalf of themselves and all individuals who have asserted claims in above-captioned litigation (the "Litigation"), specifically, Brian Bockert, Oscar Cantoran, Abel Castenada, Kristina Drake, Ismael Galvan, Antonio Gandara, David Hawk, Angela Hernandez, Michael Hill, Valdemar Martinez, Vincent Milzarek, Omar Moreno, Catherine Mueller, Ramon Noriega, Doug Norkusm Julian Rios, Erin Rottenberg, Jaron Rowe, Robert Shaw, Chris Tallian, Effie Tsakalis, Andrea VanderLaan, and Salvador Zavala (together with Named Plaintiff, the "Plaintiffs"), and Defendants Chicago Chop House, Inc. d/b/a Chicago Chop House, Charles Patel and Bharthbhai Patel (collectively "Defendants" or "Chop House") (together with Plaintiffs, the "Parties"), through their undersigned counsel, jointly move the Court for an Order approving the settlement reached in this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

The Parties have agreed to the settlement of this *bona fide* FLSA dispute following arm's-length negotiations that included the exchange of employment data and other documentation, extensive communications between counsel, and a settlement conference with the Hon. Sunil R. Harjani. The Parties submit that the terms of the Settlement Agreement are fair, reasonable, and adequate, particularly in light of the existence of disputed issues of fact, disputed issues of law with respect to liability, uncertainty as to whether each Plaintiff would obtain a judgment in his or her favor, and the risk of possible appeals.

## I.    PROCEDURAL HISTORY

On June 14, 2018, Plaintiffs Leisner, Euring and Callahan filed a one-count collective action complaint on behalf of servers and bartenders at the Chicago Chop House restaurant alleging a violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") by current and former owners and managers of the restaurant related to the tip pool. (Dkt. No. 1). Specifically, the Plaintiffs alleged that Defendants improperly kept money from the tip pool and/or distributed Plaintiffs' top pool contributions to ineligible participants. On July 24, 2018, the Named Plaintiffs, joined by Manuel Rivas, filed an Amended Complaint, adding class allegations under the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1, *et seq*. and the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1, *et seq.* (Dkt. No. 11). On August 30, 2018, with the Court's permission, Plaintiffs filed a Second Amended Complaint adding additional violations of the IWPCA and a claim under the Chicago Minimum Wage and Paid Sick Leave Ordinance, Chicago, Illinois, Municipal Code § 1-24-010, *et seq*. (Dkt. No. 31). Plaintiffs did not move to certify a class under the IMWL, the IWPCA, or the Chicago Wage Ordinance.

On December 13, 2018, the Court granted Plaintiffs' motion to conditionally certify a collective action and facilitate notice pursuant to 29 U.S.C. §216(b). (Dkt. No. 72). Twenty-four

people opted in, creating a total class of 27 plaintiffs. Defendants Chop Hospitality LLC, Matthew McCahill and Dories Siemen have been voluntarily dismissed from this case and are not a party to the Settlement Agreement. The remaining Defendants have denied all of the claims asserted by Plaintiffs and deny all liability associated with any of the facts or claims alleged in the Litigation.

After extensive written discovery, the Parties agreed to attempt global resolution of all claims with the assistance of a magistrate judge and on March 27, 2019, the Court referred the case to Magistrate Judge Sunil R. Harjani for a settlement conference. (Dkt. No. 90). Over the next several months, the Parties continued to exchange written discovery and exchanged three sets of correspondence with settlement demands and offers that included detailed analyses of the disputed facts and law at issue in this case. The parties also engaged in multiple preliminary settlement discussions with the Court.

On December 13, 2019, the Parties held a settlement conference with the Court. Although Plaintiffs believed their liability case was strong, they recognized that a complete victory on every aspect of their claims, including the measure of damages, was far from certain. Likewise, the Defendants believed they had many defenses to the various federal, state and municipal wage claims, but could not know how the case would ultimately conclude. Having sold the restaurant in 2017, and living out of state, the Patels believed that their best interests were served by seeking resolution of all claims. The Parties took into account the costs and risks associated with further litigation when engaging in the settlement process. The Parties agreed to settle the issues, matters, and things in dispute between and among them, the terms of which have been formalized in their Settlement Agreement and Release of Claims ("Settlement Agreement"), attached as Exhibit A.

II.     **STANDARD GOVERNING MOTIONS TO APPROVE FLSA SETTLEMENTS**

In the Seventh Circuit, to ensure a valid and enforceable release of an FLSA claim, parties

typically request a court of competent jurisdiction to approve the settlement. *See, e.g.*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 7, 2001). When reviewing a proposed FLSA settlement, the district court should scrutinize the settlement and decide whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1353, 1355. If a settlement in an employee FLSA suit reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

## III.   <u>ARGUMENT</u>

### A.   <u>The Proposed Settlement is the Product of Contested Litigation.</u>

The settlement reached by the Parties was achieved as the result of contested litigation to resolve *bona fide* disputes concerning Plaintiffs' entitlement to damages due to an alleged tip pool violation under the FLSA, IMWL, and a municipal wage ordinance, as well as a related IWPCA claim that arose out of the same facts. On liability, Plaintiffs would have to overcome Defendants' defense that the tip pool was in compliance with federal, state and municipal law. Counsel for Plaintiffs and Defendants found the tip pool at issue unusual and were unable to discover a court opinion directly on point. Thus, as in any complex action, the Plaintiffs generally faced uncertainties of going forward with this litigation. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"). In addition, *bona fide* disputes exist as to whether a two- rather than three-year FLSA statute of

limitations applied based on the facts of this case and the Defendants' FLSA violations, if proven, were willful.

Defendants deny liability or wrongdoing of any kind associated with Plaintiffs' claims, and affirmatively contend that all Plaintiff were fully paid for all wages and tips that they were due. Plaintiffs believe they have meritorious claims. The Parties have determined, however, that continued litigation would be protracted, expensive, uncertain, and contrary to their best interests. In light of these realities, the Parties believe that the Settlement Agreement is the best way to resolve the disputes between and among them.

### B.    The Settlement is Fair, Adequate, and Reasonable.

In reviewing the record and evaluating the strength of the case to determine whether a proposed FLSA settlement is "a fair and reasonable resolution of a *bona fide* dispute over [the application of the] FLSA['s] provisions," *Lynn's Food Stores, Inc.*, 679 F.3d at 1355, courts should consider the following non-exclusive factors: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Plaintiffs to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation." *Butler v. American Cable & Telephone, LLC*, No. 09 CV 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011).

Here, the Parties' settlement is fair and reasonable and meets all applicable factors considered by courts. The settlement appropriately factored in the complexity, risk, expense, likely duration of the litigation and the range of reasonableness of the settlement fund in light of the

1010825\305154096.v1

possible recovery under federal and state wage and hour laws. Namely, the parties were able to reach a settlement on a collective basis before incurring the expense and inefficiency of protracted litigation and after exchanging adequate discovery to perform the necessary calculations to determine potential range of recovery in this case if Plaintiffs were successful in proving their federal, state and/or municipal wage and hour claims. Accordingly, the settlement is appropriate at this stage of the proceedings.

The settlement here is not the product of fraud or collusion. The settlement was reached in an adversarial proceeding through arm's length negotiations between capable attorneys who have extensive experience with wage and hour claims. The settlement agreement was procured between counsel for the Parties after a settlement conference overseen by Hon. Sunil R. Harjani. Counsel for the Parties exchanged numerous proposals and counterproposals before, during and after the settlement conference on both monetary and non-monetary terms and were able to narrow the bridge between their positions and reach a compromised settlement.

Counsel for the Parties are experienced in complex class and collective action litigation and have represented clients in numerous wage and hour class and collective actions. Additionally, counsel for the Parties were thoroughly familiar with the facts and legal issues when settlement was reached. In the end, experienced counsel on both sides of the matter deemed the settlement fair and reasonable and a global means of ending this protracted litigation.

Finally, the amount of the settlement is reasonable in relation to the potential recovery. As in all wage and hour claims, particularly in the collective action context, the nature and amount of recoverable damages is uncertain. Even if a trier of fact ultimately found liability, a range of possible damages exist depending on factors including, but not limited to, the Parties and their witnesses' credibility, the limitations in the available data tracking work performed, the applicable

statute of limitations, and Defendants' knowledge, willfulness and good faith. As set forth above, Defendants produced adequate discovery to perform the necessary calculations to determine the potential range of recovery in this case.

Under the guidance of the magistrate judge, the parties reached a global settlement of all claims that results in the allocation of $467,081.20 to the twenty-seven (27) Plaintiffs. The distribution, which averages $17,299.30 per Plaintiff, is based on an analysis of data from over 2,400 weeks worked during a 2-year, 5-month class period.[1] To determine an equitable distribution among the Plaintiffs, the settlement funds were allocated proportionately based on the number of hours each Plaintiff worked in the class period going back three years from the date each of them opted into the lawsuit. Plaintiffs' counsel estimate that the settlement amount distributed directly to the Plaintiffs represents as much as 60% of the Plaintiffs' maximum potential claim for tip pool violations, including liquidated damages under the FLSA and Chicago Minimum Wage Ordinance and damages of 2% per month under the IMWL.

The settlement also provides for reasonable attorneys' fees and costs and a service payment to the Named Plaintiffs. Plaintiffs who favorably settle their cases are entitled to reasonable attorneys' fees and costs under the FLSA. *See* 29 U.S.C. § 216(b) (the court "*shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of action") (emphasis added). The Settlement Agreement provides that Plaintiffs' counsel will receive $140,000.00 in attorneys' fees and $918.80 in reasonable out-of-pocket costs, a compromise sum that is consistent with the attorney-client agreement executed by the Named Plaintiffs and represents less than 23% of the settlement amount and less than Plaintiffs' counsel has expended in association with prosecution of the lawsuit. (Ex. A, Settlement Agreement

---

[1] While the statute of limitations period is up to three years under the FLSA and IMWL, the class period is shorter because the Defendants sold the restaurant approximately seven months before the lawsuit was filed in this case.

§ 2.1.)

In addition, in consideration for executing a general release of their claims arising out of their employment with Defendants, and for their significant contributions to the prosecution and resolution of the lawsuit, the Settlement Agreement provides that Named Plaintiffs George Euring, Manuel Rivas and Christina Callahan will each receive a service payment of $4,000.00 in addition to their settlement share. (Ex. A, Settlement Agreement § 2.1.) "[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)).

Named Plaintiffs Euring, Rivas and Callahan played an active role at every step of this litigation. They initiated the lawsuit and the Amended Complaints, reviewed and approved the Complaints, conferred and corresponded with counsel, provided sworn declaration testimony in support of the motion for notice to similarly-situated employees, personally contacted potential opt-in plaintiffs, and personally attended and participated in the settlement conference. The amount sought for Mr. Euring, Mr. Rivas and Ms. Callahan comports with service payments awarded to Named Plaintiffs in combined state and federal wage actions of precisely this type. *See, e.g.*, *Hauser, et al. v. Alexian Brothers Medical Center, et al.*, No. 1:15-cv-6462, ECF No. 101 (N.D. Ill. Apr. 6, 2017).

Based on the aforementioned factors, the Parties conclude that a settlement on the terms set forth in the Settlement Agreement is fair, reasonable, adequate,  in the best interests of the

Parties, and not worth the costs and risks associated with continued discovery, motion practice and potential trial, including any appeals.

## IV.    CONCLUSION

For all the above reasons, the Parties respectfully request an order: (1) approving the Settlement Agreement as fair and reasonable, including the payments to Plaintiffs, the releases of claims, the service payments to the Named Plaintiffs, and the payment of attorneys' fees and costs set forth therein; (2) dismissing the action in its entirety with prejudice as to all Plaintiffs; and (3) retaining jurisdiction only for the purpose of enforcing payment of the Gross Settlement Amount as set forth in the Settlement Agreement.

Dated:  February 12, 2020                    Respectfully submitted,

/s/ Daniel Zemans_____                       /s/ Linda K. Horras_____
*Counsel for Plaintiffs:*                    *Counsel for Defendants Chicago Chop House, Inc., Charles Patel, and Bharathbhai Patel:*

Daniel Zemans
Law Offices of Daniel Zemans, LLC
500 N. Michigan Avenue, Suite 600           Linda K. Horras
Chicago, IL 60611                            Tom H. Luetkemeyer
                                             Thaddeus A. Harrell
                                             Hinshaw & Culbertson LLP
                                             151 North Franklin Street, Suite 2500
                                             Chicago, IL 60606

1010825\305154096.v1

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2020, I filed the foregoing **JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND PLAINTIFFS' UNOPPOSED MOTION FOR SERVICE AWARDS, ATTORNEYS' FEES AND COSTS** with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all CM/ECF participants.

/s/ Daniel Zemans

Daniel Zemans
The Law Offices of Daniel Zemans, LLC
500 N. Michigan Avenue, Suite 600
Chicago, IL 60611
Phone: (773) 706-7767
Email: dzemans@zemans-law.com

1010825\305154096.v1